## JOHN W. WESTOVER v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

No. 30,780.

April 24, 1936.

*F. W. Root, C. O. Newcomb*, and *A. C. Erdall*, for appellant.
*Gleason & Ward* and *Charles A. Sawyer*, for respondent.

LORING, JUSTICE.

This case comes here upon an appeal by the railway company from an order denying its motion for judgment notwithstanding

[1]Reported in 266 N. W. 741, 267 N. W. 427.

the verdict or for a new trial upon all issues, the trial court having granted a new trial on the issue of damages alone because of the excessive verdict.

The plaintiff was injured while in the railway company's employ, and the suit is brought under the federal employers liability act. He was driving a gasolene-powered track-car along the main track of the defendant company in the state of Iowa, and at an intersection of the track with a highway he was injured when he ran into the side of an automobile which was attempting to cross the railway tracks.

The principal question involved on this appeal is whether his lack of care, if any, in failing to observe and to avoid a collision with the automobile was of that character classified by the Supreme Court of the United States as primary and therefore a complete defense to this action, or only such as would go to the reduction of damages under the federal employers liability act.

The accident happened August 21, 1933. The plaintiff was the foreman of a crew engaged in mowing weeds along the railway track. They had a car equipped with power-driven sickle bars on both sides. This car was towed behind the track-car which the plaintiff was driving at the time he was injured. When the sickles were in operation each of his two subordinates was charged with the duty of operating the levers which controlled the position of one of the sickle bars. At the time the accident occurred the mower was not in operation, and the sickle bars were elevated to a position nearly vertical. As the car was being towed in that condition there was danger that the sickle bars might be jarred from their upright position, and at least one of the subordinate members of the crew was charged with the duty of looking back to see that the sickle bars were riding properly. It was also his duty to observe whether they were being overtaken by any train. The gasolene track-car on which the entire crew was riding at the time of the accident was apparently equipped with a four-cylinder model T Ford motor and radiator which was installed in the middle of the front end of the car. The gearshift and brake lever were immediately behind and possibly a little to the left of the middle of the

car. The most convenient position for the driver was on a board platform or seat which ran fore and aft the entire length of the track-car. His position would be on the left side of the car immediately behind and with his right hand convenient to the control levers, his right foot hanging down or resting upon the floor of the car, which was so shaped that it was a convenient receptacle for tools, extending the length of the car. His left foot would be conveniently placed on a board which was outside of the top of this toolbox or tray and which formed a protection or fender above the wheels of the car. In that position his body would be turned a little to the left of a front-facing position. In order to look straight to the front he would have to turn his face somewhat to the right. The plaintiff was sitting in this position at the time of the collision. Behind him on the left side was his subordinate who was charged with the observation toward the rear. On the right-hand side of the car in a similar position to that of the plaintiff except that he was turned correspondingly to the right was a conductor-pilot, who was not a member of the plaintiff's crew but who was charged with the duty of protecting the car against trains and notifying the driver of highway crossings which he might be approaching. He sat slightly farther forward than the plaintiff. To the rear of the conductor-pilot sat Baxmann, the plaintiff's other subordinate. Plaintiff states that he had charged Baxmann with the duty of observing the terrain to the right-front so that amongst other things he might advise the plaintiff of approaching vehicles.

At the time of the accident it was raining, and the occupants of the car put on their goggles. The track-car and mower were being driven southerly or southeasterly, and the automobile with which it collided was approaching from the west on an east-and-west road which formed an angle with the railway track of about 60 degrees. When the track-car was within 1,000 feet of the highway intersection, Petty, the conductor-pilot, advised the plaintiff that they were approaching the highway crossing. When they were 180 feet from the crossing they were midway in a cut, the side of which was about five feet higher than the railway track. When they were something over 100 feet from the crossing there was a clear view

toward the right, the direction from which the automobile was approaching. Prior to entering this cut the plaintiff had looked to the right but at no time observed the approaching automobile until he was within 10 or 15 feet of it as its front wheels came upon the track. He says that at the speed he was going he could have stopped the car in a distance of 25 feet. The collision with the automobile threw the automobile into the ditch and turned it around facing the west. The track-car went on for about 40 feet beyond the crossing, turned crossways of the railroad track, and stopped. Apparently no one on the track-car saw the automobile until the collision was imminent. The plaintiff says that he was wearing goggles and that the rain on the goggles somewhat interfered with his vision. Baxmann, who, the plaintiff asserts, had been charged with the duty of keeping a lookout to the right, did not do so. It is the plaintiff's position that under the company's rules he, as foreman of the mowing crew, could place the responsibility on a member of that crew to keep a lookout in one direction while he performed that duty in another. It is also his position that the rules of the company and the common law duty of the conductor-pilot required the pilot to keep a lookout for approaching vehicles. Both the pilot and Baxmann, plaintiff's subordinate, were in a much better position to observe vehicles approaching from the right than was the driver of the car. The pilot sat slightly forward of the driver but close enough to somewhat obstruct the vision of the driver to the right. It is the contention of the company that its rules required the driver to keep a lookout in all directions and that his failure to do so constituted primary negligence within the rule laid down by the federal courts; that though Baxmann and Petty may have been guilty of negligence in not observing the approaching vehicle and warning him of it, he, as driver, was negligent in failing to perform a duty which was primarily imposed upon him and consequently that there can be no recovery. The plaintiff claims that his attention was diverted to the left by an automobile parked in a driveway leading to the highway and not far from the track, and also by a team of horses which was being unhitched in a field near by. Since neither of these objects presented any hazard to the

operation of the car and a fleeting glance from the plaintiff would have so advised him, we do not consider this element to be one of importance in the case. Nor was the slight dip in the highway, some 150 feet to the west, an important element because apparently there is no claim by plaintiff that he looked in that direction after leaving the cut. The dip was not deep enough to obscure the presence of the car passing through it. Farther to the west the road was higher.

The solution of the problem here presented is a difficult one. 45 USCA, c. 2, § 51, abolished the fellow servant rule and makes a railroad engaged in interstate commerce liable to its employes for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employes * * *." 45 USCA, c. 2, § 53, abolished contributory negligence as a complete defense under the federal employers liability act, leaving it to diminish the damages in proportion to the amount of negligence attributable to the employe.

Upon these statutes the federal courts have developed the doctrine of so-called "primary negligence" as a complete defense.

The defendant very earnestly contends that the plaintiff's failure to see the automobile approaching the crossing from the right was in direct violation of its positive rules; that he was in physical control of the track-car and that the primary duty to control its operation and to keep a lookout rested on him; that even though other employes riding on the car were required by such rules to keep a lookout it was the primary duty of the plaintiff, and their failure to warn him of the approach of the automobile was but a failure to perform a duty that he was primarily bound to perform himself, and that hence he cannot recover.

Its general rules provided:

"Don't depend upon others to warn you of the approach of trains, cars or vehicles. They may be expected from any direction at any time. Always be on the lookout."

With regard to track-cars the rules also provided:

"When there are other employees on the car, the operator of a track-car must at all times face the direction in which the car is moving, *and the foreman will see to it that a lookout is kept in both directions.*" (Italics supplied.)

Another rule provided:

"The operator of a track-car will see to it that employees face both directions and everyone on the car must keep a sharp lookout at all times for approaching trains, for dogs, for chickens, for hogs, for other animals, and for dirt, stones, sticks and other things, which might be struck and result in derailing the car."

The defendant relies upon Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. ed. 212, and similar cases where the doctrine of the injured employe's primary negligence is invoked and was held to preclude a recovery. In the Davis case the widow of an engineer sought to recover for his death under circumstances where, contrary to specific orders, he had passed a meeting point and collided with another train. Recovery was sought on the ground that other members of the crew, as well as the engineer, were bound to look out for the approaching train and that their negligence contributed to the engineer's death. The court in denying recovery said [266 U. S. 148]:

"It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary as he had physical control of No. 4, and was managing its course. It seems to us a perversion of the statute to allow his representative to recover for an injury directly due to his failure to act as required on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more."

Many of the cases cited by appellant arose out of circumstances where the plaintiffs in charge of trains had passed meeting points against orders or were in violation of specific orders to avoid specific peril, such as trains approaching from the opposite direction. It is plaintiff's contention that the primary negligence doctrine does not apply where the violation is of rules generally en-

joining caution or responsibility, and he cites the case of Miller v. Central R. Co. (C. C. A.) 58 F. (2d) 635, 637 (*certiorari* denied 287 U. S. 617, 53 S. Ct. 18, 77 L. ed. 536). In that case the conductor, in violation of rules, ordered his train to proceed past a meeting point. A collision resulted. The engineer was generally responsible for the safety of his own train and at the time the collision occurred was engaged in firing the engine then being operated by the fireman. If he had looked from the fireman's side he could have seen the approaching train with which he collided, but he was at the time, engaged in putting a fire in the engine and did not see it. It was held that his contributory negligence was not primary. It seems from the opinion that he had no specific orders for meeting the train with which he collided but that in passing the point where the meeting should have taken place he was violating a general rule. The court said [58 F. (2d) 637]:

"But it seems to us that the situation involved two concurring acts of contributory negligence, and was not one where the employee disobeyed a rule and is 'primarily' responsible. * * * All these decisions involved specific precautions for specific occasions; the stopping of a train at a given spot until another passed, or until the track was clear. No doubt the doctrine is not confined to train movements, (Paster v. Pennsylvania R. R. 43 F. [2d] 908 [C. C. A. 2]) ; but it does not seem to us to extend to rules generally enjoining caution, or responsibility,—in spite of some of our language looking to the contrary in Reynolds v. New York O. & W. R. Co. (C. C. A.) 42 F. (2d) 164. If it did, an employer could revive the defense of contributory negligence by imposing as an affirmative duty such care as is appropriate to the situation, which is just what the common law makes a condition upon recovery. The statute was designed to end that defense and cannot be so conveniently avoided; the doctrine does not in our judgment apply, except when more definite commands are given to meet more definite situations; how definite we need not decide."

In Rocco v. Lehigh Valley R. Co. 288 U. S. 275, 279, 53 S. Ct. 343, 344, 77 L. ed. 743, the court in commenting upon the primary negligence cases which were there cited said:

"These were cases where a member of a train crew was killed as a result of disregarding orders to wait at a given point until a train moving in the opposite direction had passed. In each of them the decedent's negligence was the proximate and efficient cause of the accident; in each it was sought to show that the fatality was in part due to alleged negligence of some other employe in omitting to give the decedent an order which would have reminded him of the orders previously given and by which he was bound."

In that case there was evidence of negligence on the part of the train crew of the train with which Rocco, the track inspector on an inspection tricycle, negligently collided. The case might well have been distinguished from other primary negligence cases on that ground. We quote the language of the court as showing its views as to these primary negligence cases [288 U. S. 279]:

"If the rule had forbidden him to leave under circumstances such as inquiry by him would have disclosed, this case would be parallel with those cited."

In Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 250, 60 L. ed. 528, the plaintiff was a brakeman who relied upon the statement of a fellow brakeman that there was sufficient clearance between the train on which he was riding and a car standing upon a side track. The assurance of his fellow brakeman proved to be wrong, and he was injured by coming in contact with the standing car. It was there held that his contributory negligence was not of such a character that he was precluded from recovery. The court said [240 U. S. 70]:

"Thus, the jury could properly regard the two brakemen as assisting each other in the movement in question. Such assistance was certainly appropriate, if not absolutely necessary. The very purpose of having two brakemen was not to put upon either the entire responsibility. Working together under the exigencies of such operations, particularly when conducted in the night time, it was manifestly contemplated that the one brakeman would supplement the other and not be compelled at the peril of his rights personally

to examine what the other did or the basis of the reports the other gave. Each had a reasonable latitude in relying upon the statements of the other made in the course of the operation and as a part of it. * * * It was plainly permissible to infer from the testimony that the two men were not in positions of equal advantage, and Skaggs was entitled to the exercise of reasonable care on the part of Buchta in observing and reporting the position of the cars. As there was evidence upon which it could be found that Buchta was negligent, and that thereby injury resulted to Skaggs, it cannot be said that the recovery in this aspect of the case was contrary to the statute."

In the light of these decisions we come to the problem here presented. The rules of the company, while admonishing all employes at all times to keep a lookout, particularly prescribed how such lookout should be kept upon a track-car when others were on the car beside the operator. We think a fair construction of the rules quoted contemplates a sharing of responsibility in the matter of lookout. When the operator of a track-car is alone on the car he is required by the rules to keep a lookout in all directions, but when there are other employes upon the car with him the foreman (in this case the plaintiff) "will see to it that a lookout is kept in both directions." The operator is required to face the direction in which the car is moving. In the case at bar the plaintiff as operator and foreman kept a lookout to the front and left and required one of his subordinates to keep a lookout to the right-front. The seating arrangements were such that the employes on one side had an advantage over those on the other in the matter of observation toward the side on which they were sitting. The conductor-pilot sat somewhat forward of the plaintiff and necessarily somewhat obstructed the plaintiff's view. Baxmann, plaintiff's subordinate, as well as the pilot, were sitting so that they faced somewhat to the right on the seat on that side of the car. Under the rules quoted, we think that these men could properly be regarded as assisting each other in the matter of observation and that the observation of a possible obstruction could be more advantageously performed by the dis-

tribution of the duty. These men might reasonably supplement each other's observation without constantly making observation in the directions where their associates were in a better position to see. Having imposed upon his subordinates the duty of observation to the right, it seems to us that the plaintiff might rely on compliance with his orders, and that silence on the part of Baxmann at least was equivalent to an assurance that no obstacle was within Baxmann's view or that no vehicle was approaching that was likely to collide with the track-car. It seems to us that the plaintiff had reasonable latitude in relying upon Baxmann's observation in this regard and that though he may have been guilty of some negligence which contributed to his injury he is not guilty of that kind of negligence which has been called "primary" by the Supreme Court. Consequently, he may recover for the negligence of his fellow servants in failing to keep the lookout required of them. As we view the record, the question of whether he was negligent was a jury question.

We do not think that as a matter of law the plaintiff assumed the risk in view of the arrangements which he had made for observation by the members of his crew. If he could stop the car within 25 feet, it would seem to be sufficiently in control if his crew performed its duty.

The trial court ordered a new trial upon the question of damages alone because of the excessive verdict. In the light of the expression of the Supreme Court in M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501, 75 L. ed. 1243, we think the verdict is vitiated on all issues by passion and prejudice and that on that account the order granting a new trial must be modified so that the case will be resubmitted on all issues.[3] The order appealed from is affirmed insofar as it denied the motion for judgment, and the order for a new trial is modified so as to grant a new trial on all issues.

[3]See supplemental opinion, infra, p. 204.

On May 22, 1936, the following supplemental opinion was filed:

LORING, JUSTICE.

On objection by the respondent to appellant's proposed taxation of costs our attention is invited to the fact that we modified the order for a new trial on a point not argued or assigned as error by appellant. On its motion for a new trial defendant based its motion in part upon the excessive verdict due to passion and prejudice. The court granted the motion for a new trial on the question of damages only. On appeal here the defendant made no point that the passion and prejudice vitiated the verdict as a whole. Our holding upon this point was therefore an inadvertence.

Other assignments as to the charge and rulings we have carefully considered, and, while the charge (due no doubt to a multiplicity of requests) was prolix and more complicated than necessary, we find no error that we consider prejudicial. As to Petty, the conductor-pilot, we think that regardless of rules, plaintiff in his management of the car might reasonably expect ordinary care on Petty's part in warning of approaching vehicles within the immediate line of his vision, especially since Petty's position was such as to obstruct in part plaintiff's vision to the right-front. Other errors are, we think, not prejudicial.

For the reason first stated, we modify our decision and affirm the order of the trial court.

Affirmed.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.